UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:08-CV-22278-GOLD/McALILEY

KIRK DAVID, on behalf of himself and others similarly situated,

    Plaintiff,

vs.

AMERICAN SUZUKI MOTOR CORPORATION and SUZUKI MOTOR CORPORATION,

    Defendants.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 3

PROCEDURAL BACKGROUND .............................................................................................. 4

ARGUMENT .............................................................................................................................. 5

I.  DAVID LACKS STANDING TO ASSERT EXPRESS WARRANTY CLAIMS BECAUSE HE HAS NOT PRESENTED HIS MOTORCYCLE UNDER THE RECALL ................................................................................................... 5

II. IN THE ALTERNATIVE, DAVID'S EXPRESS WARRANTY CLAIMS ARE MOOT BECAUSE SUZUKI OFFERED A SUFFICIENT REMEDY ......... 8

    A.    The Court Cannot Offer Effectual Relief Because Suzuki Has Made Available The Requested Remedies .................................................. 8

    B.    David's Status As A Named Plaintiff Does Not Preclude His Claim From Being Mooted .......................................................................... 10

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Asp v. Toshiba America Consumer Products, LLC*,
   616 F. Supp. 2d 721 (S.D. Ohio 2008) ................................................................................... 7

*Basham v. Audiovox Corp.*,
   198 S.W.3d 9 (Tex. Ct. App. 2006) ........................................................................................ 6

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ............................................................................................ 11

*Brooks v. Ga. State Bd. of Elections*,
   59 F.3d 1114 (11th Cir. 1995) .............................................................................................. 10

*Deposit Guaranty Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) .............................................................................................................. 10

*DiMaio v. Democratic Nat'l Comm.*,
   520 F.3d 1299 (11th Cir. 2008) .............................................................................................. 7

*E.F. Hutton & Co., Inc. v. Hadley*,
   901 F.2d 979 (11th Cir. 1990) ............................................................................................ 6, 8

*Elend v. Basham*,
   471 F.3d 1199 (11th Cir. 2006) ........................................................................................... 6, 7

*Freeman v. Med. Protective Co. of Fort Wayne, Ind.*,
   No. 08-80479-CIV,
   2008 WL 2965168 (S.D. Fla. Aug. 1, 2008) .......................................................................... 7

*Griffin v. Dugger*,
   823 F.2d 1476 (11th Cir. 1987) ............................................................................................ 11

*Harris v. Evans*,
   20 F.3d 1118 (11th Cir. 1994) ................................................................................................ 5

*Holstein v. City of Chicago*,
   29 F.3d 1145 (7th Cir. 1994) .................................................................................................. 9

*Labora v. MCI Telecommunications Corp.*,
   No. 98-1073-C,
   1998 WL 1572719 (S.D. Fla. July 20, 1998) ................................................................... 9, 10

*Locke v. Bd. of Pub. Instruction of Palm Beach County*,
   499 F.2d 359 (5th Cir. 1974) ................................................................................................ 11

*Midwest Printing, Inc. v. AM International, Inc.*,
   108 F.3d 168 (8th Cir. 1997) .................................................................................................. 6

*Nat'l Adver. Co. v. City of Miami*,
   402 F.3d 1329 (11th Cir. 2005) ............................................................................. 10

*In re Pacific Forest Prods. Corp.*,
   335 B.R. 910 (S.D. Fla. 2005) ................................................................................. 3

*Pollard v. Cockrell*,
   578 F.2d 1002 (5th Cir. 1978) ................................................................................. 8

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ............................................................................. 11

*Rand v. Monsanto Co.*,
   926 F.2d 596 (7th Cir. 1991) ................................................................................... 9

*Roper v. Consurve, Inc.*,
   578 F.2d 1106 (5th Cir. 1978) ............................................................................... 11

*Steele v. Nat'l Firearms Act Branch*,
   755 F.2d 1410 (11th Cir. 1985) ............................................................................... 6

*Thomas v. Interland, Inc.*,
   No. Civ.A.1:02-CV-3175CC,
   2003 WL 24065651 (N.D. Ga. Aug. 25, 2003) .................................................. 9, 10

*Tucker v. Phyfer*,
   819 F.2d 1030 (11th Cir. 1987) ............................................................................. 10

*Valdivieso v. Atlas Air, Inc.*,
   305 F.3d 1283 (11th Cir. 2002) ............................................................................... 3

*Walsh v. Ford Motor Co.*,
   807 F.2d 1000 (D.C. Cir. 1986) ............................................................................... 8

## <u>Rules</u>

Fed. R. Civ. Proc. 23(a) ................................................................................................. 11

Fed R. Civ. Proc. 56 ......................................................................................................... 1

S.D. Fla. L.R. 7.1.A.3 ...................................................................................................... 1

S.D. Fla. L.R. 7.5 ............................................................................................................. 1

iii

Pursuant to Federal Rule of Civil Procedure 56 and S.D. Fla. L.R. 7.1.A.3 and 7.5, defendants American Suzuki Motor Corporation and Suzuki Motor Corporation (collectively "Suzuki") move for summary judgment on plaintiff Kirk David's express warranty claims in the Class Action Complaint, Counts II and VI. For the reasons set forth below, in the Concise Statement of Undisputed Material Facts, and the Declarations of Jim Kirkland and Shon Morgan, the Court lacks subject-matter jurisdiction over plaintiff's express warranty claims because plaintiff lacks standing and those claims are moot in any event.

## PRELIMINARY STATEMENT

After plaintiff sued alleging his motorcycle was destroyed as a result of a defective frame, Suzuki initiated a voluntary safety recall relating to possible frame issues with that model. The Court recognized the applicability of this recall to David in its June 16, 2009 Order (the "Order") on Suzuki's motion to dismiss:

> Plaintiff David is facially eligible for the recall (his motorcycle is a 2006 Suzuki GSX R-1000), and the recall recognizes and seeks to address the very frame defect identified in Plaintiff's Complaint. However, Plaintiff has not availed himself of the recall.

(D.E. 60, June 16, 2009 Order at 14 (footnote omitted)). David's counsel even conceded at oral argument that a full remedy to David would bar his express warranty claim:

> if [the remedy] truly mooted out [the claim] by addressing the totality of the defect that we've alleged, I would agree that we wouldn't have standing under the terms of the express warranty.

(D.E. 63, Tr. of Oral Argument, March 27, 2009, at 40:13-16).

-1-

The remedies under Suzuki's recall that are appropriate for the vast majority of affected customers--a reinforcement brace or replacement frame--would not apply to David because he contends his vehicle was completely destroyed. In recognition of his unusual circumstances, Suzuki offered David replacement with the current model of his motorcycle or, in the alternative, to repurchase his motorcycle. David nonetheless has still declined to avail himself of Suzuki's recall offer--apparently because of the consequences for his lawsuit he acknowledged at the motion to dismiss hearing.

The case law confirms that David's concern for his claims is well-placed, but he cannot find safe harbor simply by ignoring the recall. Courts in similar warranty actions for allegedly defective products have held that a plaintiff who fails to request or accept a replacement lacks standing to sue for breach of express warranty. As one court reasoned, in such cases there is no injury-in-fact that confers standing because the plaintiff "did not avail herself of the remedy that would have fully compensated her." Even if David arguably had threshold standing, Suzuki's offer to provide a replacement or a refund--the precise remedies David seeks under his express warranty claims--renders his claim moot and provides an independent basis to grant summary judgment on Suzuki's behalf.

Unlike David, thousands of owners have participated in the recall, received the remedies appropriate for their circumstances, and are back on the road without complaint. Despite the desire of David (or his attorneys) to litigate on behalf of that group anyway, he cannot manufacture an individual dispute by avoiding the full warranty remedy available to him.

## FACTUAL BACKGROUND

Plaintiff Kirk David owns a 2006 Suzuki GSX-R1000 motorcycle. He alleges that on May 29, 2006, "the frame of the motorcycle broke and fell apart during normal use." (D.E. 1, Compl. ¶ 21; D.E. 81, Concise Statement of Undisputed Material Facts ("SUMF") ¶ 3). Plaintiff further contends this was the result of a weakness in the frame. (Compl. ¶ 3; SUMF ¶ 3). Solely for purposes of this motion, Suzuki will assume those allegations are true.[1]

On January 21, 2009, Suzuki notified owners of 2005-06 GSX-R1000s that it was initiating a voluntary safety recall campaign relating to the frames of those vehicles. (SUMF ¶ 4). The voluntary safety recall campaign was reviewed by the National Highway Traffic Safety Administration ("NHTSA"). (SUMF ¶ 5). The recall requests that affected owners bring their motorcycles to an authorized Suzuki dealer for inspection and remedy. (SUMF ¶ 6).

When an owner presents his motorcycle to the dealer, the dealer inspects the frame for cracks pursuant to instructions from Suzuki and using a dye penetrant test kit. (SUMF ¶ 7; D.E. 79, Kirkland Decl. ¶ 5 and Ex. B, Service Bulletin - GS/GSX/GSX-R BULLETIN NO. 192 at 2). If no cracks are detected a reinforcement brace is attached. (SUMF ¶ 8). If cracks are detected the frame is replaced. (SUMF ¶ 9). The owner is not

---

[1] Suzuki reserves the right to contest at a later stage the condition of plaintiff's motorcycle and the cause of that condition. *See, e.g., Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1285 n.4 (11th Cir. 2002) (per curiam) (noting that the party moving for summary judgment conceded a fact for purposes of the motion, but reserved the right to challenge that fact at a later stage if necessary); *In re Pacific Forest Prods. Corp.*, 335 B.R. 910, 921 n.11 (S.D. Fla. 2005) (assuming a fact for purposes of the motion before the court that the moving party had conceded for purposes of the motion, but that the party had reserved the right to challenge at a later stage).

charged for the inspection, attachment of the brace, replacement of the frame, or any other applicable remedy. (SUMF ¶ 10).

David has not presented his motorcycle to a Suzuki dealer under the recall. (SUMF ¶ 14). Because David alleges his 2006 GSX-R1000 was essentially destroyed as a result of a frame failure, he is not eligible for the reinforcement brace. (Compl. ¶¶ 3, 21; SUMF ¶ 11). Nor would a replacement frame be a suitable repair. (SUMF ¶¶ 8, 9, and 11). Thus, if David is eligible to participate in the recall, and Suzuki assumes he is for purposes of this motion, the appropriate remedy would be a replacement vehicle (at this point a 2009 GSX-R1000) or repurchase. Suzuki conveyed this offer to David (through counsel) on July 13, 2009. (SUMF ¶ 12; D.E. 80, Morgan Decl. ¶ 2 and Ex. A, Letter from S. Morgan to R. Honik at 1-2). Suzuki did not seek a release or settlement with David as part of its recall offer. (SUMF ¶ 13; Letter from S. Morgan to R. Honik at 1-2).[2]

## PROCEDURAL BACKGROUND

The Order dismissed all plaintiff's claims except for the breach of express warranty claims. (Order at 27). Because the recall presented issues outside the Complaint, the Court converted the defendants' motion to dismiss the express warranty claims to a motion for summary judgment. (Order at 10-11, 27). The issues outside the

---

[2] Although the recall materials did not specifically address the possibility that Suzuki might provide a consumer a replacement motorcycle if appropriate, such a remedy is not excluded. The only exclusions apply to motorcycles with modified frames. (Kirkland Decl. ¶ 6 and Ex. C, Notice to Owners of the 2005 and 2006 GSX-R1000 at 2; Service Bulletin - GS/GSX/GSX-R BULLETIN NO. 192 at 3). Thus, no provision in the recall documents somehow limits Suzuki to offering the reinforcement brace or a replacement frame where other remedies would be more appropriate.

Complaint were the "critical jurisdictional issues of standing and mootness." (Order at 13).

At the hearing on the motion to dismiss the Court framed the jurisdictional inquiry as follows:

> **[THE COURT:** Doesn't plaintiff] have an inherent problem here to establish that there is a viable case or controversy given the recall proceeding . . . until and unless Mr. David submits that cycle to Suzuki under the recall and either they fix it completely, in which case what's his damage here and does he have a claim, or they say, you know, "Mr. David, I'm sorry. We think the use of the cycle was so outside the parameters that this doesn't apply to you," which would seem to be not the most opportune approach on Suzuki's part given what is at stake here.

(Tr. of Oral Argument, March 27, 2009, at 36:11-22).

## ARGUMENT

### I. DAVID LACKS STANDING TO ASSERT EXPRESS WARRANTY CLAIMS BECAUSE HE HAS NOT PRESENTED HIS MOTORCYCLE UNDER THE RECALL

David's failure to present his motorcycle under the recall means any inquiry into the adequacy of his recall remedy is hypothetical. David thus cannot satisfy the central purpose of the Article III standing inquiry: "to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (en banc). David bears the burden "to plead and prove injury in fact, causation, and

redressability." *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) (quoting *Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1414 (11th Cir. 1985)). "If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).

Courts have held in similar circumstances that a plaintiff who fails to avail himself of remedies offered for an allegedly defective product lacks standing to pursue express warranty claims. A close example is *Basham v. Audiovox Corp.*, 198 S.W.3d 9 (Tex. Ct. App. 2006). The plaintiff filed a consumer class action against Audiovox based on allegedly defective walkie-talkies bought at a Best Buy store. *Id.* at 11. The plaintiff contacted Audiovox about the problem but did not make a warranty claim or attempt to return the walkie-talkies. *Id.* Best Buy had a 30-day refund policy, which was supported by an agreement with Audiovox, and Audiovox offered a 90-day repair or replace warranty. *Id.* As here, the only claims at issue were breach of express warranty under state law and the Magnuson-Moss Act. *Id.* The *Basham* court affirmed dismissal of the case, holding that the plaintiff lacked standing to assert her warranty claims because she could not "establish that she was damaged by Audiovox's failure to comply with its warranty." *Id.* at 14. The court further reasoned that "both Audiovox and Best Buy guaranteed a refund, but [the plaintiff] did not avail herself of the remedy that would have fully compensated her. *Id.* at 13.

Similarly, in *Midwest Printing, Inc. v. AM International, Inc.*, 108 F.3d 168 (8th Cir. 1997), the plaintiff bought a printing press that did not perform to its satisfaction. As here, the manufacturer offered to replace the press with a new version of the same model but the plaintiff refused and demanded a refund and damages. *Id.* at 170. Affirming summary judgment, the Eighth Circuit held under Missouri law that the plaintiff could not sue for breach of express warranty without having first accepted the replacement. *Id.* at 172 ("However, we will never know whether the replacement press offered by AM

would have complied with the warranties made. Mid-West's refusal to accept AM's offer to replace the press precludes Mid-West from recovering on this theory.").

Nor can a plaintiff avoid the standing bar by simply alleging that the (untried) replacement product would be inadequate. For example, in *Asp v. Toshiba America Consumer Products, LLC*, 616 F. Supp. 2d 721, 728-29 (S.D. Ohio 2008), the court held under New Jersey law a plaintiff failed to state an express warranty claim because he had not permitted the manufacturer to repair or replace the defective product (a DVR). The plaintiff contended he believed the manufacturer's remedy would be insufficient based on information in an e-mail from the manufacturer's customer service department and Internet research. *Id.* at 729. The court rejected this argument and dismissed at the pleading stage, holding that the plaintiff could not contend the express warranty failed of its essential purpose without having presented the product to the manufacturer. *Id.* at 730-31.[3]

Like the plaintiff in *Toshiba*, David cannot create standing by arguing that remedies he never received, such as the reinforcement brace or frame replacement, might be ineffective. Owners of GSX-R1000s who have presented their motorcycles under the recall and received those remedies may have Article III standing to challenge those

---

[3] In contexts other than consumer warranty claims, the Eleventh Circuit similarly has held that speculative injuries cannot confer Article III standing. *See Elend*, 471 F.3d at 1209 (holding that protesters challenging an alleged Secret Service policy that kept protesters in "Protest Zones" did not satisfy the Article III standing inquiry because the claim was "entirely speculative" as to the future protests that would be subject to the allegedly unconstitutional policy); *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008) (per curiam) (a registered Florida voter had failed to allege an actual injury with respect to Florida's delegates to the Democratic National Convention not being seated because he "never alleged that he actually voted, nor even so much as suggested that he intended to vote in the Florida Democratic Primary"); *Freeman v. Med. Protective Co. of Fort Wayne, Ind.*, No. 08-80479-CIV, 2008 WL 2965168, at *2 (S.D. Fla. Aug. 1, 2008) ("Plaintiffs have not alleged that they have actually suffered reduced reimbursements, but merely predict what the effect of the no-consent law will be in the future. This kind of speculative damage is insufficient to allege an injury in fact that will support plaintiffs' standing.").

remedies, but David does not. "[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication o[f] a particular issue and not whether the issue itself is justiciable." *E.F. Hutton*, 901 F.3d at 984-85 (quoting *Pollard v. Cockrell*, 578 F.2d 1002, 1005-06 (5th Cir. 1978) and holding that a bankruptcy trustee lacked standing to assert claims on behalf of the bankrupt's creditor customers). Rather, David's standing must derive from alleged inadequacies with the recall that *he* has experienced—of which it is undisputed there are none.

## II.   IN THE ALTERNATIVE, DAVID'S EXPRESS WARRANTY CLAIMS ARE MOOT BECAUSE SUZUKI OFFERED A SUFFICIENT REMEDY

### A.   The Court Cannot Offer Effectual Relief Because Suzuki Has Made Available The Requested Remedies

Even assuming David has standing to assert express warranty claims, his claims are nonetheless moot because Suzuki offered the relief he seeks under Counts II and VI. Plaintiff's prayer for relief in Counts II (Breach of Express Warranty) and VI (Violation of the Magnuson-Moss Warranty Improvement Act) specifically asks that Suzuki:

> [R]efund *the purchase price* of the vehicles owned by the plaintiff and the class members or, in the alternative, to *replace those vehicles with substantially similar vehicles* of merchantable quality[.]

(Compl. ¶¶ 47.b, 76.b). Thus, by David's own admission replacement with the current model GSX-R1000 or repurchase of his motorcycle is a sufficient express warranty remedy.[4] Plaintiff's counsel further acknowledged at the March 27 hearing that a complete remedy to David would bar his claim:

---

[4] "[S]tate warranty law lies at the base of all warranty claims under Magnuson-Moss." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986).

> if [the remedy] truly mooted [the express warranty claim] out by addressing the totality of the defect that we've alleged, I would agree that we wouldn't have standing under the terms of the express warranty.

(Tr. of Oral Argument, March 27, 2009, at 40:13-16).

David cannot seek to proceed on these claims after having been offered the relief he requested. "'Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate.'" *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)); *see also Labora v. MCI Telecommunications Corp.*, No. 98-1073-CIV, 1998 WL 1572719, at *2 (S.D. Fla. July 20, 1998), *aff'd* 204 F.3d 1121 (11th Cir. 1999) ("[A] case will be subject to dismissal on grounds of mootness when a defendant satisfies the plaintiff's demand for relief." (citing *Holstein*, 29 F.3d at 1147)). If the Court were to permit David to proceed on his claim the individual relief he could obtain is no greater than what Suzuki offered under the recall.

District courts within the Eleventh Circuit have held that "a plaintiff's claim becomes moot when a defendant offers the plaintiff all relief he could receive if his claim were fully litigated, even if the plaintiff does not accept such offer." *Thomas v. Interland, Inc.*, No. Civ.A.1:02-CV-3175CC, 2003 WL 24065651, at *3 (N.D. Ga. Aug. 25, 2003). In *Labora*, the plaintiff brought a putative class action alleging a billing error. *Labora*, 1998 WL 1572719, at *1. After the lawsuit was filed defendant MCI refunded the amount the plaintiff was allegedly overcharged and moved to dismiss. *Id.*

at *1. The *Labora* court held that the refund mooted the plaintiff's claim because it represented his total potential damages. *Id.* at *2.[5] The same result is required here.

### B. David's Status As A Named Plaintiff Does Not Preclude His Claim From Being Mooted

David cannot defeat this motion, which is directed only at his individual claims, simply because the case is a putative class action. "Where a defendant tenders an offer of complete relief to the named plaintiff on his individual claim, and no class has yet been certified, the defendant's offer moots the entire cause of action, including the putative class claims." *Thomas*, 2003 WL 24065651, at *4; *see also Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot."). Here, no class has been certified nor has David moved to certify, so his status as a putative class representative cannot override the mootness of his individual claim.

Nor is Suzuki's July 13 offer an improper effort to "pick off" David's individual claim to the detriment of the class. Although the pre-split Fifth Circuit recognized limitations on the ability of a defendant to settle with a putative class representative, *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), *aff'd sub nom. Deposit Guaranty*

---

[5] Because a judgment on the merits would not offer David any greater relief than Suzuki has already offered, an adjudication on the merits would contravene the principle that "federal courts may adjudicate only actual, ongoing cases or controversies." *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (per curiam) ("If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion.").

*Nat'l Bank v. Roper*, 445 U.S. 326 (1980), Suzuki's offer under the recall was not a settlement proposal. *See id.* at 1110-11 (limiting the ability of a defendant in a putative class action to moot an *appeal* by *settling* with the named plaintiff).

Suzuki's offer to David was made as part of a safety recall campaign that encompasses the entire putative class.[6] Providing (or at least making available) a remedy to David as part a recall directed at all putative class members does not offend the relationship between David and the putative class. *See Locke v. Bd. of Pub. Instruction of Palm Beach County*, 499 F.2d 359, 363-66 (5th Cir. 1974)[7] (affirming a dismissal of a putative class action after the defendant changed the challenged policy and provided the named plaintiff relief she requested). Additionally, as the Court noted in the Order, before the Court reaches "the question of whether named Plaintiff has standing to represent a class, [the Court] must determine whether Plaintiff David has standing to pursue his individual claims." (Order at 9 n.7); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("*Only after* the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) (emphasis added))).

---

[6] The Court noted in its June 16 order that "[a]ccording to Plaintiff, 'on January 21, 2009, [Defendants] sent letters to every single member of the putative class to initiate a recall of the motorcycles for the very same defect asserted in this litigation.'" (Order at 13 (quoting D.E. 48, Resp. to Suzuki Japan's Mot. to Dismiss at 2)).

[7] Decisions of the Fifth Circuit before October 1, 1981 are "binding as precedent in the Eleventh Circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

## CONCLUSION

Based on the foregoing facts and authorities, Suzuki respectfully requests that the Court grant summary judgment determining that plaintiff lacks standing to assert his breach of express warranty claims, or in the alternative that these claims are moot.

DATED:  August 31, 2009

s/ Shon Morgan
Shon Morgan (Ca. Bar No. 187736)
Ryan S. Goldstein (Ca. Bar No. 20844)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100
Attorneys for American Suzuki Motor Corporation
and Suzuki Motor Corporation

s/ Stanley H. Wakshlag
Stanley H. Wakshlag (Fla. Bar No. 266264)
Ismael Diaz (Fla. Bar No. 575771)
Kenny Nachwalter, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida 33131-4327
Telephone:     (305) 373-1000
Facsimile:      (305) 372-1861
Attorneys for American Suzuki Motor Corporation
and Suzuki Motor Corporation

## CERTIFICATE OF SERVICE

**I certify** that on August 31, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Stanley H. Wakshlag

## SERVICE LIST

*Kirk David, et al. v. American Suzuki Motor Corporation, et al.*
Case No. 08-22278-CIV-GOLD/MCALILEY
United States District Court, Southern District of Florida

Alexander Clark, Esq.
aclark@winstonlaw.com
Winston & Clark, P.A.
8211 West Broward Boulevard, Suite 420
Plantation, Florida  33324
Telephone:     (954) 475-9666
Facsimile:     (954) 475-2279
*Attorneys for Plaintiff*
*Via CM/ECF*

Ruben Honik, Esq.
rhonik@golombhonik.com
Michael S. Levin, Esq.
mlevin@golombhonik.com
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, Pennsylvania  19102
Telephone:     (215) 985-9177
*Attorneys for Plaintiff*
*Via CM/ECF*

Kimberly L. Boldt, Esq.
kimberly@abbrclaw.com
Alters, Boldt, Brown, Rash & Culmo, P.A.
21 Southeast 5th Street, Suite 200
Boca Raton, Florida  33432
Telephone:     (561) 955-0045
Facsimile:     (561) 955-1978
*Attorneys for Plaintiff*
*Via CM/ECF*

Stanley H. Wakshlag, Esq.
swakshlag@kennynachwalter.com
Ismael Diaz, Esq.
idiaz@kennynachwalter.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL 33131-4327
Telephone:     (305) 373-1000
Facsimile:     (305) 372-1861
Attorneys for Defendants American Suzuki Motor Corporation and Suzuki Motor Corporation
Via CM/ECF