UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-CV-22278-GOLD/McALILEY

KIRK DAVID, on behalf of himself and others similarly situated,

    Plaintiff,

vs.

AMERICAN SUZUKI MOTOR CORPORATION and SUZUKI MOTOR CORPORATION,

    Defendants.

**ORDER OVERRULING OBJECTIONS; GRANTING MOTION FOR
FINAL APPROVAL OF SETTLEMENT [DE 107]; APPROVING ATTORNEYS'
FEES AWARD; DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE**

**I.   Introduction**

THIS CAUSE is before the Court upon Plaintiffs' Motion for Final Approval of Class Settlement **[DE 107]** ("the Motion"). Four objections were timely filed. **[DE 98]**; **[DE 99]**; **[DE 102]**.[1] Having reviewed and considered the relevant submissions, the arguments of the parties as presented at the April 2, 2010 Fairness Hearing, and the applicable law, I overrule the objections, grant the Motion, certify the Settlement Class, appoint Class Counsel, approve the Settlement as fair, reasonable, and adequate, and approve Class Counsel's request for attorneys' fees for the reasons that follow.

**II.   Background**

On August 13, 2008, named Plaintiff Kirk David (hereinafter "David" of "Plaintiff") filed this action against Defendants American Suzuki Motor Corporation and Suzuki Motor

---

[1] A fourth objection was filed, but does not appear on the docket. Despite its absence from the docket, however, I choose to consider the merits of the objection in the interests of justice.

Corporation (hereinafter "Suzuki" or "Defendants"), on behalf of a putative class of owners and lessors of model year 2005 and 2006 GSX-R1000 motorcycles made and sold by Suzuki (hereinafter "Qualifying Motorcycles"). More than twenty-six thousand Qualifying Motorcycles were sold in the United States and its territories. The claims asserted in this action arose from a frame defect that could allegedly cause the Qualifying Motorcycles' frames to crack and fail catastrophically. In order to remedy the alleged defect, Defendants initiated a voluntary recall of the Qualifying Motorcycles on January 21, 2009, identifying the owners and lessors of the Qualifying Motorcycles throughout the United States of America and offering to install a brace on the frames of the Qualifying Motorcycles in order to reinforce the frames.

Prior to the initiation of the recall, Defendants filed separate Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12 **[DE 8]**; **[DE 29]**. Defendant Suzuki Motor Corporation also filed a Motion to Strike Plaintiff's Nationwide Class Allegations **[DE 30]**. In an order dated June 16, 2009 **[DE 60]**, I granted in part and denied in part the Defendants' motions. I also converted the requests for dismissal of the express warranty claims to a Motion for Summary Judgment and ordered additional briefing and discovery. *Id.* Before and after the Motions to Dismiss were decided, the parties engaged in significant informal discovery pertaining to the issues addressed in my June 16, 2009 Order and thereafter engaged in contentious motion practice over the scope and substance of discovery. In addition, Plaintiff consulted engineering and other experts to help formulate and substantiate the claims in his case in preparation for class certification, dispositive motions, and, ultimately, for trial.

After a lengthy mediation in Maui, Hawaii, the parties entered into a class-wide settlement agreement – memorialized in a Stipulation of Settlement (the "Stipulation") dated January 26, 2010 **[DE 93-1]** – that provides for substantial remedies in addition to the benefits of

the recall program. It is estimated that the proposed Settlement's direct monetary benefit to the proposed Settlement Class exceeds $5 million.[2]

The benefits of the Settlement can be summarized as follows. First, the Settlement provides economic relief to the Settlement Class, including a $500 credit toward the purchase of a new Suzuki motorcycle, or a $40 credit toward parts, accessories, or service on existing Suzuki motorcycles. Second, Defendants have agreed to extend the frame warranty to ten years from the date of the application of the recall remedy for the Qualifying Motorcycles. Third, Defendants have agreed to submit to arbitration the claims of class members whose motorcycles were damaged as a result of the alleged frame defect for possible monetary awards.

In early February, I granted the parties' Joint Motion for Preliminary Approval of the Settlement **[DE 93]** and set a Fairness Hearing for April 2, 2010. **[DE 95]**. In that Order, I conditionally certified a class for purposes of settlement[3] and concluded that the class notice program proposed by the parties satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1-3), providing the best notice practicable under the circumstances to the members of the Settlement Class. Having provided notice to the Settlement Class in accordance with my Preliminary Approval Order, Plaintiff now moves for final certification of the Settlement Class and for final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(2), which provides that class actions may be settled "only with the court's approval" and requires that the court hold a "hearing and find[] that the settlement is fair,

---

2  *See* **[DE 118-1]**.

3  The Settlement Class is defined as: "[A]ll persons and entities within the United States and its territories who owned or leased a 2005 or 2006 model year Suzuki GSX-R1000 motorcycle during the period August 13, 2008 through the date of Preliminary Approval. If ownership was transferred during the Settlement Class Period, any right to benefits under this Settlement shall inure solely to the benefit of the current registered owner as of the date of Preliminary Approval  Excluded from the Settlement Class are Suzuki employees and those persons who have executed releases releasing Suzuki from liability concerning or encompassing any or all claims that are the subject of the Action. Also excluded are any Class Members who have pending litigation against Suzuki encompassing any or all claims that are the subject of the Action as of the date of Preliminary Approval."
**[DE 95]**.

reasonable and adequate" if the settlement would bind class members.

## III. Analysis

Having considered the relevant submissions, the arguments of the parties as presented at the April 2, 2010 Fairness Hearing, and the applicable law, I conclude as follows:[4]

    A. I have subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), and have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

    B. I have personal jurisdiction over all parties hereto, including the members of the Settlement Class. I have jurisdiction over the Settlement Class because its members were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."). In the instant case, notice was provided through various mediums including, but not limited to, direct first-class mail, Internet placement, and notice by publication in the following newspapers: Miami Herald, New York Times, LA Times, Washington Post, Des Moines Register, Houston Chronicle, Chicago Tribune, and the Seattle Times. Such notice is the best notice practicable under the circumstances and constitutes due and sufficient notice to

---

4   This Order incorporates by reference the definitions set forth in the Stipulation of Settlement **[DE 93-1]**, and all terms used herein have the same meaning as set forth in the Stipulation, unless otherwise stated.

all persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirement of Rule 23(e) of the Federal Rules of Civil Procedure and constitutional principles of due process.

C. The proposed Settlement is appropriate for certification as a Rule 23(b)(3) class action. It is well-settled that district courts are vested with broad discretion in determining whether to certify a class. *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997). To be certified under Rule 23, a class must initially satisfy the four threshold requirements of Rule 23(a), which are as follows: (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class must exist (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy of representation). *See* Fed. R. Civ. P. 23(a). A plaintiff seeking to represent a class bears the burden of establishing that all four requirements have been met. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n.2 (11th Cir. 1987); *Rutstein v. Avis Rent-a-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (noting that "initial burden of proof to establish the propriety of class certification rests with the advocate of the class."). These prerequisites are mandatory and the failure to establish any one is fatal to a motion for class certification. *See Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984) (noting that a class action may only be certified "if the Court is satisfied, after a rigorous analysis, that the prerequisites of Fed. R. Civ. P. 23(a) are met."). In addition to meeting the four preliminary requirements of Rule 23(a), a Plaintiff moving for class certification must

also satisfy one of the subsections of Rule 23(b). *Rutstein*, 211 F.3d at 1233 (noting that "[a] class action may be maintained only when it satisfies all the requirements of [Rule] 23(a) and at least one of the alternative requirements of Rule 23(b).") (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (footnote omitted) (emphasis added)). Thus, failure to satisfy at least one of the subsections of Rule 23(b) requires that class certification be denied. In the instant case, Plaintiff seeks certification pursuant to Rule 23(b)(3), *see* **[DE 93]**, which provides that the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

D. In determining whether Plaintiff has met his burden under Rule 23, I will not consider the merits of the claims at issue. *Eisen v. Carlisle & Jacqueling*, 417 U.S. 156, 177-178 (1974); *Kirkpatrick*, 827 F.2d at 722; *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). Instead, my inquiry is limited to whether the requirements of Rule 23 have been satisfied. However, this principle should not be "talismanically invoked to artificially limit a trial court's examination of facts necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love*, 733 F.2d at 1564. Hence, district courts may look beyond the complaint to determine whether a motion for class certification should be granted. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Kirkpatrick*, 827 F.2d at 722. Moreover, in the context of proposed settlement classes, district courts may properly consider that there will be no trial. *See Amchem*

*Prods., Inc. v. Windsor*, 521 US. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")

E. Here, the Settlement Class satisfies the four prerequisites of Federal Rule 23(a).

    a. Numerosity is evidenced by the fact that more than twenty-thousand Qualifying Motorcycles were sold. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (noting that numerosity requirement of Rule 23(a) is satisfied by the impracticability of joinder, which is generally presumed if a putative class amounts to more than forty individuals).

    b. The commonality requirement is also satisfied in this case because of the common issues that are susceptible to class-wide proof. As the Eleventh Circuit has noted, "commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982) (footnote omitted). Here, there are many, including, but not limited to, whether Defendants allegedly breached express warranties in connection with the sale of the Qualifying Motorcycles.

    c. As for Rule 23(a)(3), Mr. David's claims are typical of the putative class because "the claims . . . of the class and [Mr. David] arise from

7

the same event or pattern or practice [i.e., the qualifying motorcycles' design flaw] and are based on the same legal theory [i.e., breach of warranty]." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Moreover, Mr. David "possess[es] the same interest [i.e., remediation of the design flaw] and suffer[ed] the same injury as the class members [i.e., actual or threatened frame failure]." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).

d. Rule 23(a)(4)'s requirements have also been met in the instant case. The adequacy element requires that the representative party in a class action "adequately protect the interests of those he purports to represent." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citations omitted). This element applies to both the named plaintiff and class counsel. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000). This "analysis encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representative will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189 (citations omitted). The Settlement in this case avoids conflicts of interests because each member

      Settlement Class member will benefit from the extended warranty provisions of the Settlement, and all members of the Settlement Class will be entitled to some compensation in the form of purchase and service credits.[5] Furthermore, Mr. David has demonstrated vigorous prosecution of the Settlement Class members' claims and Proposed Class Counsel has zealously represented the interests of the Settlement Class in motion practice and settlement negotiations. Accordingly, for purposes of settlement, Mr. David and Proposed Class Counsel are adequate representatives of the Settlement Class pursuant to Rule 23(a)(4).

F. The Settlement Class also satisfies Rule 23(b)(3)'s predominance requirement, which requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 2010 WL 1196420, *6 (11th Cir. Mar. 30, 2010) (cites and quotes omitted). Neither party disputes that the predominance requirement is satisfied in this case, and the Court concurs, given that all members of the Settlement Class members enjoyed common legal rights that the Defendants allegedly infringed upon, and that Defendants have not demonstrated the existence of non-frivolous defenses to liability that are unique to individual class members. *See id.*; *see also* Section E(b)-(c), *supra*. Moreover, adjudicating this controversy (settlement) as a class action is fair, efficient, and far

---

5 Claimants whose motorcycles suffered damage will also have the opportunity to arbitrate the question of whether Suzuki is responsible for any damage to their Qualifying Motorcycle by reason of the alleged frame design defect.

superior to the specter of requiring more than twenty-thousand persons to bring individual actions regarding the exact same motorcycle frame design flaw.[6] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004) (noting that district courts conducting Rule 23(b)(3) analysis "must weigh . . . whether certification will cause manageability problems" and emphasizing that a key issue in "assessing whether [a] class action will create significant management problems . . . [is] whether it will create relatively more management problems than any of the alternatives," such as individual actions). Thus, regardless of whether this class action would be manageable or maintainable for purposes of trial, it can be certified as a settlement class because all of the requirements of Rule 23(a) and Rule 23(b)(3) have been met with regard the proposed Settlement.[7] *See Amchem*, 521 U.S. at 619.

G. Therefore, pursuant to Federal Rule of Civil Procedure 23, and for purposes of settlement only, the Court hereby certifies this action as a class action on behalf of the following Settlement Class: **All persons and entities within the United States and its territories who owned or leased a 2005 or 2006 model year Suzuki GSX-R1000 motorcycle during the period August 13, 2008 through the date of Preliminary Approval. If ownership was transferred during the Settlement Class Period, any right to benefits under this Settlement shall inure solely to the benefit of the current registered owner as of the date of Preliminary Approval.**

---

6 It bears mentioning that requiring the putative class members to bring individual actions could effectively deny many of them any recovery whatsoever. Specifically, putative class members who have not suffered an actual frame failure would likely encounter difficulty in obtaining representation, as the purchase of a defective motorcycle frame that has not yet failed might be "too slight" an injury to justify an individual suit. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, (7th Cir. 2006) (noting that "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.").

7 I note that manageability still informs this Court's Rule 23(b)(3) analysis to the extent that the proposed Claims Administration and Arbitration processes should be manageable. Having reviewed the proposed Claims Administration and Arbitration procedures, I conclude that they are.

> **Excluded from the Settlement Class are Suzuki employees and those persons who have executed releases releasing Suzuki from liability concerning or encompassing any or all claims that are the subject of the Action. Also excluded are any Class Members who have pending litigation against Suzuki encompassing any or all claims that are the subject of the Action as of the date of Preliminary Approval.**

H. Because I have certified a Settlement Class, I must now appoint class counsel. Fed. R. Civ. P. 23(g)(1). Having carefully considered the record and my experience with counsel throughout the course of this litigation, I find that Golomb & Honik, P.C., Winston & Clark, P.A., and Alters, Boldt, Brown, Rash, & Culmo, P.A. have done excellent work in identifying and investigating potential claims, and have the knowledge, resources, and experience necessary to fairly and adequately represent the interests of the Settlement Class.[8] *See* Fed. R. Civ. P. 23(g)(1)-(4).

I. I now turn to the terms of the Settlement and my obligation to assess its fairness, reasonableness, and adequacy. Fed. R. Civ. P. 23(e). Having carefully considered the terms of the Settlement, the argument of counsel as presented at the Fairness Hearing, and "the facts of the case in relation to the relevant principles of applicable law," *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1531 (11th Cir. 1994) (cites and quotes omitted), I conclude that the Settlement is fair, adequate, and reasonable in

---

8  I recognize that Rule 23(g)(2) provides that "[i]f more than one adequate applicant seeks appointment [as class counsel], the court must appoint *the applicant* best able to represent the interests of the class." While the the rule appears to have been drafted in the singular, the Advisory Committee Notes for the 2003 Amendments to Rule 23 clarify that the rule contemplates the appointment of more than one attorney or firm: "In many instances, the applicant will be an individual attorney. In other cases, however, an entire firm, or perhaps numerous attorneys who are not otherwise affiliated but are collaborating on the action will apply. No rule of thumb exists to determine when such arrangements are appropriate; the court should be alert to the need for adequate staffing of the case, but also to the risk of overstaffing or an ungainly counsel structure."

light of the six "fairness" factors articulated by the Eleventh Circuit.[9] These factors, all of which militate in favor of approving the instant Settlement, are as follows:

    i. the existence of fraud or collusion behind the Settlement.

    ii. the complexity, expense, and likely duration of the litigation;

    iii. the stage of the proceedings and the amount of discovery

    iv. the probability of Plaintiffs' success on the merits;

    v. the range of possible recovery; and

    vi. the opinions of the class counsel and representative, and the substance and amount of opposition to the Settlement.

*See Leverso*, 18 F.3d at 1530.

J. Specifically, I note that the Settlement is the product of good faith, arm's-length negotiations between Class Counsel and counsel for the Defendants, that there is no indicia of fraud or collusion among the parties, that this highly complex case was adequately developed before settlement such that Class Counsel had an adequate appreciation of the merits before negotiating, that the opposition to the Settlement is minimal, and that Class Counsel incurred considerable risk and expense in taking on this matter with no guarantee of success -- expense and risk that would have been greatly compounded had this matter proceeded to trial.[10] *See id.*; *see also Association for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (Gold, J.) ("a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness.").

---

9  The Eleventh Circuit has cautioned that a district court considering these factors "should be hesitant to substitute . . . her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991) (citation omitted).

10  This certainly was not a "file and settle" or "file and trial" type case, as is demonstrated by the fact that it took almost a year simply to get past the 12(b) phase of these proceedings.

K. Next, I address the reasonableness of the incentive award of $5,000 and a new motorcycle for Mr. David, the named Plaintiff. "While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. In fact, 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Exxon v. Allapattah Svcs.*, 454 F. Supp. 2d. 1185, 1218-19 (Gold, J.) (S.D. Fla. 2006). Here, it is beyond dispute that the proposed incentive award is reasonable, particularly given that: (1) Mr. David is in the minority of class members who suffered a non-collision frame failure and would thus likely be entitled to a new motorcycle even absent the incentive award; and (2) Mr. David participated actively in the litigation from start to finish (e.g., he was involved in selecting class counsel, communicating with witnesses, and in directing litigation strategy).

L. I now turn to the objections that have been filed in opposition to the proposed Settlement. Three objections were raised by putative class members, with a fourth asserted by the State of Texas.

M. The crux of the individual objections is that the proposed Settlement does not adequately compensate class members for the decline in value their motorcycles have suffered as a result of the recall and this litigation. These objections are OVERRULED based on the evidence submitted by the parties, namely, the affidavit of James Kirkland **[DE 107-6]**, who has reviewed reliable industry data concerning the resale values of the motorcycles at issue following the recall and concluded that

their resale value is roughly comparable (on a percentage of original list price basis) to competitive models of other manufacturers and comparable non-defective Suzuki motorcycles.

N. Additionally, one of the individual objectors contends that the proposed Settlement does not adequately compensate him for the fear he still harbors about the safety of the motorcycle. This objection is also OVERRULED in light of the evidence submitted regarding the safety of the retrofitted motorcycles. Specifically, I note that Suzuki is unaware of a single report of frame failures with any of the retrofitted motorcycles since the recall was implemented more than a year ago, and that Suzuki engineers have extensively tested the retrofit remedy and concluded that the brace remedy sufficiently enhanced the frame integrity so as to eliminate any safety issues. *See* **[DE 107-5]**.

O. The State of Texas also objects to the proposed Settlement,[11] arguing that the Settlement provides nothing more than coupons "premised on future purchases that enrich the Defendant." **[DE 99]**. This objection is also OVERRULED. While I agree with the State of Texas insofar as coupon settlements are generally disfavored, *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007), this particular settlement does not simply provide coupons "premised on future purchases that enrich the Defendant," as Texas alleges.[12] For example, as part of the Settlement, Suzuki will extend the frame warranty to ten years from the date the frame was

---

11 "The Attorneys General are statutorily empowered by the United States Congress to receive and review all class action settlements. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007) (citing the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, which is codified in scattered sections of Title 28 of the United States Code).

12 While coupon settlements may be disfavored, there is no bright-line rule holding that post-CAFA coupon settlements can *never* be approved as fair, adequate, and reasonable. *True v. American Honda Motor Co.*, 2010 WL 707338, *12 (C.D. Cal. Feb. 26, 2010) (citation omitted).

repaired or replaced under the Safety Recall Campaign. Redemption of this award does not require any purchase on the part of class members. Moreover, the Settlement sets forth arbitration procedures available to certain claimants that can result in enforceable monetary awards.

## IV.   Attorneys' Fees

While the "American Rule" typically requires parties to bear their own costs in litigation, there is an exception to this axiomatic rule in cases where counsel has obtained a substantial monetary or non-monetary benefit for a class.[13] This exception is known as the "common fund exception [and] 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.' " *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Thus, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Id.* (citing Fed. R. Civ. P. 23(e)).

The Eleventh Circuit has directed district courts considering the amount of a fee award in common fund cases to ensure that "attorneys' fees awarded from a common fund[14] [are] based

---

13   The common fund exception to the American Rule also applies "when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members." *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

14   While I recognize that the fee award requested by Class Counsel will be paid separately by Defendants and is not drawn from a "common fund" in the traditional sense, there is authority directing "district courts to exercise their equitable jurisdiction to review counsel-fee arrangements negotiated in connection with class-action settlements -- even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir. 1999); *see also* Fed. R. Civ. P. 23(h). Here, unlike other cases where the common fund approach has been rejected because the non-monetary settlement's value was inflated, difficult to calculate, or illusory because of the nature of the benefits, *see e.g., Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 853 (5th Cir. 1998), the value of the proposed settlement's benefits is ascertainable and has been estimated at approximately $5 million. *See* [DE 118-1]. Accordingly, I will exercise my equitable jurisdiction and determine the reasonableness of class counsel's fee award as if I were dealing with a class action settlement that generated a $5 million common fund from which a $1 million fee award has been requested. I note that no objections have been raised regarding the application of the "common fund" approach in this case to determine the reasonableness of the requested fee

upon a *reasonable percentage* of the fund established for the benefit of the class." *Id.* (emphasis added). While there is no hard-and-fast rule identifying what sort of percentage constitutes a "reasonable percentage," the Eleventh Circuit has expressly noted that the "majority of common fund fee awards fall between 20% to 30% of the fund" and has directed district courts to view this figure as a "benchmark percentage fee award which may be adjusted in accordance with the individual circumstances of each case." *Camden I*, 946 F.2d at 775. Having considered pertinent factors and the circumstances of this particular case, I conclude that the requested $1 million fee award – which equates to approximately 20% of the monetary value of the Settlement, *see* note 14, *supra* – is reasonable.[15] Fed. R. Civ. P. 23(h). Accordingly, the State of Texas' objection **[DE 99]** is OVERRULED and the fee award requested by Class Counsel is APPROVED.

V.  **Conclusion**

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that:

1.  The Motion for Final Approval of Settlement **[DE 107]** is GRANTED in

---

award. Instead, the only fee-related objection concerns "the lack of proportion" between the nature of the settlement and the requested fee award. **[DE 99]**.

15 Specifically, I have considered: (1) the time and labor required to reach the settlement, which was significant (e.g., the settlement was reached only "after extended and intense negotiations, as well as an all-day mediation session with mediator Anthony Piazza in Maui, Hawaii" with party representatives from around the globe, **[DE 107, p. 5]**); (2) the novel and difficult questions of law raised by this litigation, *see e.g.,* **[DE 60]**; (3) the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one; (4) the customary fee in class actions that result in substantial benefits for the class (i.e., 20% - 50% of the common fund's value), *see Camden I,* 946 F.2d 774-75; (5) the amount involved and the results obtained, which are notable given that "products liability class actions are exceedingly difficult to successfully prosecute," **[DE 107-11]**; (6) the fact that "[t]his action was prosecuted by [class] counsel entirely on a contingent fee basis," **[DE 107, p. 31]**; (7) the experience, reputation, and ability of class counsel, who have unquestionably proven themselves to be of "the highest caliber" **[DE 107-11]**; and (8) the limited number of objections by class members (or other parties) to the settlement terms and the fees requested by counsel. *See Camden I,* 946 F.2d at 775 (noting that "*Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases," that district courts should consider "other pertinent factors" as well, and directing "district court[s] [to] articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based").

accordance with the terms of this Order.

2. The Court hereby appoints Golomb & Honik, P.C., Winston & Clark, P.A., and Alters, Boldt, Brown, Rash, & Culmo, P.A. as Class Counsel to represent the Settlement Class.

3. Notwithstanding the certification of the Settlement Class and appointment of class representatives, if this Order is reversed on appeal or upon the termination of the Stipulation **[DE 93-1]**, the foregoing certification shall be void and of no further effect, and all parties shall be returned to the status they occupied before entry of this Order, without prejudice to any legal argument any of the parties may assert.

4. The Class Members that have requested to opt-out of the Settlement ("Opt-Out Plaintiffs") in accordance with the opt-out procedures approved by this Court, see **[DE 95, p. 12]**, will not be bound by the Settlement.

5. Any Class Member who does not seek exclusion from the Class in accordance with the terms and conditions of the Stipulation of Settlement **[DE 93-1]**, who does not file a Proof of Claim form in conformance with paragraph 25 of the Stipulation, *id.*, and who does not file a Request for Arbitration in conformance with paragraph 27 of the Stipulation, *id,* will not be entitled to receive any Suzuki Purchase Credits, an Arbitration Award or any other benefits pursuant to the Settlement, but will otherwise be bound together with all Class Members by all of the terms of the Settlement, and will be barred from bringing any action against any of the "Released Parties concerning the "Released Claims," as those terms are

defined in the Stipulation. **[DE 93-1]**.

6. Each and every Releasing Party, as that term is defined in the Stipulation **[DE 93-1]**, shall be deemed to have fully, finally and forever released, relinquished and discharged all Released Claims against the Released Parties.

7. Nothing contained herein shall be construed to release or foreclose any personal injury claims of any persons, which are specifically excluded from the Stipulation of Settlement and from this Order approving same. Without affecting the finality of this Order in any way, this Court will retain jurisdiction over: (a) the implementation of this Settlement and any award or distribution of the benefits conferred upon the Class; and (b) all of the parties to this action for the purpose of construing, enforcing, and administering the Settlement..

8. All claims are hereby DISMISSED WITH PREJUDICE.

9. All upcoming hearings are CANCELLED.

10. The clerk is directed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida this 15 day of April, 2010

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc: Counsel of record
Magistrate Judge Chris M. McAliley